UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


THOMAS WEAVER,

        Plaintiffs,                        Case Number: 07-10984


v.


                                          DISTRICT JUDGE PAUL D. BORMAN
DOW CORNING CORPORATION,        MAGISTRATE JUDGE STEVEN D. PEPE
THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA,


        Defendants.

_____/


**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR ATTORNEY FEES (Dkt. #35)**


On November 13, 2008, Plaintiff moved for attorney fees pursuant to 29 U.S.C. § 1132(g)(1) (Dkt. #35). This motion has been referred for Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) (Dkt. #36). On January 13, 2009, a hearing was held on Plaintiff's motion at which time all unresolved issues were addressed. For the reasons stated on the record and indicated below, **IT IS RECOMMENDED** that Plaintiff's motion be **GRANTED IN PART.**

**I.**      **BACKGROUND**

      This case involves a claim for continuing disability benefits against the claimant's former employer and the employer's current plan administrator after the claimant was paid benefits for

twenty-four months by a different plan administrator.  Plaintiff, a resident of the Midland

County, Michigan, was an employee of Dow Corning Corporation ("Dow") from 1982 through

2001 (Compl. ¶ 1).  Dow is a corporation, which does business in Wayne County, Michigan

(Compl. ¶ 2).  Defendant Prudential Insurance Company of America ("Prudential") sells

insurance products and conducts business in Wayne County, Michigan (Compl. ¶ 3).

### A)      Dow Disability Benefit Plans

At the time of Plaintiffs employment with Dow, the company provided disability

insurance to its employees through two separate plans.  The first was a Disability Insurance

Policy (Unum Policy") issued by Unum Life Insurance Company of America (referred to as

"Unum" or "Unum Provident"), where Unum served as both the plan administrator and insurer

for the first twenty-four months of disability benefits for which a claimant was eligible.  The

second plan came into effect after the twenty four month period of coverage provided by Unum.

Under this second plan, Defendant Dow self-insured the payments and used a third-party

administrator ("TPA") to administer the claims.  Originally, Unum also served as the TPA for

this coverage but on January 1, 2002, Defendant Dow changed its TPA from Unum to Prudential

(Dkt. #25, Ex. 1, Jones Dep. 14:22-15:5).  Under Prudential, this plan was called the Long Term

Disability Plan ("Prudential Plan").

According to Sherri Jones, a health and welfare benefits team leader at Dow, a claimant

is not required to fill out a new application for benefits after the twenty-four month period

because the claim would automatically transfer (Dkt. #25, Ex. 1. Jones Dep. 17:5-11).  In

addition, both Unum's Policy and Prudential's Plan contain a specific provision ("Mental and

Nervous Provision") pertaining to disabilities primarily based on self-reported symptoms and

2

disabilities due to mental illness (Dkt. #26, Ex. A, Prudential Plan 17 & Ex. F, R. at 620).

According to the provision, such disabilities are limited to a pay period of up to 24 months (*id.*).

**B)      Plaintiff's Disability Benefits Claim**

Plaintiff last worked for Dow on November 26, 2001 (Dkt. #25, Ex. 1, Jones Dep.
8:9-13).  On February 9, 2002, Plaintiff filed an application for disability benefits, in which he
indicated that he suffered from chronic fatigue, chronic pain, and fibromyalgia (Dkt. #26, p. 6).
Plaintiffs "disability date" was determined to be November 27, 2001 (Dkt. #25, Ex. 1, Jones
Dep. 8:9-13).

On July 25, 2002, after several months of delay, Unum denied Plaintiff's claim (Dkt. #25,
Ex. 6, June 25, 2002, Letter).  After providing a summary of Plaintiff's pertinent medical history,
Unum concluded that it denied benefits to Plaintiff because "a review of th[e] medical
information by our medical staff including a consulting physician, did not identify clinical
findings that would support a significant physical or psychiatric treatment" (*id.* at 3).  Plaintiff
appealed the decision to deny benefits, but on July 31, 2002, Unum denied the appeal (Dkt. #25,
Ex. 7, July 31, 2002 Letter).

Following the appeal of his denial of benefits, Plaintiff retained counsel to further pursue
his benefit claim.  On January 17, 2003, Plaintiff's counsel wrote Unum a letter, requesting, *inter
alia*, that Unum re-evaluate Plaintiff's claim and allow Plaintiff's counsel to participate in the
reevaluation process (Dkt. #25, Ex. 8, Jan. 17, 2003 Letter).  Unum denied Plaintiff's request
because Plaintiff did not submit any additional medical testing or documentation (Dkt. #25, Ex.

9, March 5, 2003, Letter).

Consequently, on October 15, 2003, Plaintiff filed suit against Unum in the Circuit Court of Wayne County, Michigan, alleging breach of contract, unfair trade practices and ERISA violations. On November 17, 2003, Defendant removed the case to this Court on the basis of federal question jurisdiction under ERISA.

On January 3, 2005, Plaintiff filed a Motion for Voluntary Dismissal Without Prejudice, pursuant to Fed. R. Civ. P. 41(a)(2) (No. 03-74608-PDB, Doc. No. 16). In that motion, Plaintiff indicated that he was pursuing a voluntary reassessment of his disability claim with Unum, pursuant to a November 2004 regulatory settlement between Unum, various state agencies, state insurance regulators and the U.S. Department of Labor (*id.*).

On February 17, 2005, this Court entered an Order of Removal of Action as a Pending Matter, staying the action and allowing the parties to pursue Unum's reassessment of Plaintiff's benefits claim (No. 03-7460S-PDB, Doc. No. 19). As part of the reassessment of his claim, Plaintiff signed a "Reassessment Information Form" with Unum on January 25, 2006, which essentially released Unum from liability for the prior denial of benefits if the reassessment resulted in Plaintiff receiving benefits for the twenty-four month period at issue.

Subsequently, Unum conducted a reassessment of Plaintiff's claim for disability benefits. On July 5, 2006, Unum advised Plaintiff and his attorney that it was reversing its previous determination that denied Plaintiff disability benefits (Dkt. #26, Ex. B, July 5, 2006 Letter). The letter stated that the Unum Policy provided a maximum period of payment of two years (*id.*). Although the letter does not specifically refer to the Mental and Nervous Provision, it does indicate that Unum based its reassessment on the Social Security Administration's finding of

4

"multiple psychiatric diagnosis [sic]" (*id.*).  The letter provides in pertinent part:

> [Plaintiff's] reassessment form (RIF) was received on January 30, 2006. In reassessing his claim we did the following: reviewed the entire claim file, reviewed all the information and material you submitted with his RIF, spoke with [Plaintiff's counsel] on the phone, obtained records from the Social Security Administration, and had a medical review completed.
>
> We have reviewed [Plaintiff's] Social Security award based on *multiple psychiatric diagnosis* [sic] and have determined that benefits are due [to Plaintiff].  Social Security's evaluation determined that his disability causes him to experience moderate restrictions in activities of daily living and social functioning. [Plaintiff] also experiences deficiencies of concentration, persistence or pace, which result in a failure to complete tasks in a timely manner.  These restrictions would prevent him from performing his own occupation.

(*Id.*) (emphasis added).

After this reassessment was made, the status of Plaintiff's continuing benefits claim remained unclear for several months.  First, on August 17, 2006, a Unum representative e-mailed Sherri Jones, a Dow health and benefits team leader, informing her that Unum had "processed a reassessment evaluation for [Plaintiff] . . . [and that] the reassessment resulted in benefits being paid to Plaintiff for two years" (Dkt. #25, Ex. 11, Aug. 17, 2007, Letter).  The next day, Ms. Jones responded, in pertinent part, as follows: "I had an after thought . . .  may I also get copies of the approval letter (for the 1st two years)? I'll need that for our files here; especially if disability benefits continue into the self-insured portion of the contract" (Dkt. #26, Ex. 11, Aug. 18, 2006, E-mail).

Then, on August 24, 2006, Unum's Assistant Vice President and Counsel, Lisa Montelongo, wrote to a Prudential representative informing him that Unum "has paid all disability benefits due to [Plaintiff] and that any further claim benefits by [Plaintiff] would be under the self-insured portion of Dow's disability plan which is administered by Prudential"

(Dkt. #25, Ex. 12, Aug. 24, 2006, Letter).

During this time period, Plaintiff's counsel and Unum were preparing paperwork to terminate the litigation between them and release Unum from further responsibility. As such, Plaintiff's counsel and Unum made inquiries to Prudential and Dow as to the status of Plaintiff's claim (*See* Dkt. #25, Exs. 13, 14 & 15).

On September 15, 2006, Plaintiff's counsel received an e-mail From Shannon Glidden, disability claim technician for Prudential, stating that Ms. Glidden was the disability claims manager assigned to Plaintiff's claim and that she was in the process of reviewing it (Dkt. #25, Ex. 16, Sept. 15, 2006, E-mail).

Finally, on October 9, 2006, Prudential sent Plaintiff's counsel an e-mail informing him that Plaintiff's claim was terminated because it was inactive when received by Prudential:

> Hi Larry, I have been advised that the Disability Claims Manager (Shannon Glidden) that was assigned to [plaintiff's] claim spoke with the Unum Provident reassessment analyst. Unum Provident approved and terminated Mr. Weaver's claim based on a 24 month provisional limitation in the contract. Thus, the claim we received is being inactivated as it is not an active claim that would be coming over to Prudential for assessment of benefits. Apparently, a letter should be coming to you from Ms. Glidden which will formally indicate our position.

(Dkt. #25, Ex. 17, October 9, 2006, E-mail). Plaintiff's counsel then received a formal letter from Ms. Glidden reiterating Prudential's position regarding Plaintiff's claim. In the letter, Ms. Glidden explains Prudential's decision:

> It would appear on reassessment, Unum Provident determined that [Plaintiff] was eligible for 24 months disability based on a psychiatric condition. This would limit his benefits to 24 months. The following is an excerpt of her review:
>
> "Claim is a 2 yr max duration policy with a 2 yr. MN limitation.
>
> File has been reviewed by MD, which indicates ssdi was awarded on mood disorder, major depression, personality disorder, chronic pain syndrome with parasthesis of

6

lower and right upper quadrant pain. In relation to r&ls from psych ssdi found psychologically impaired and suggested a payee be assigned."

I contacted Nancy Smith, the claim reassessment consultant, for UnumProvident to discuss their claim determination and the letter which had been sent to you. Ms. Smith confirmed that the only reason this claim was paid for 2 years was based on the Social Security Administration's assessment of [Plaintiff's] psychiatric condition. She confirmed that he was paid under the 24 month Mental and Nervous provision as outlined in the policy.  This claim was terminated after 24 months as it had reached the 24 month limitation in the policy. I asked then, why she had not quoted this language in the determination letter which was sent to you.  She indicated it was an error on her part but since the policy was 24 months in duration anyway she did not feel it needed correction at this time.  I told her that we would be advising you of this and she said she would be happy to discuss their decision with you further.

Based on the above information, it would appear your client's claim was paid under the 24 month Mental Nervous limitation.  At that time his claim was terminated and he was no longer eligible for benefits.  He is not eligible for benefits under the policy that Prudential administers because we evaluate claims for benefits beyond 24 months.   It is our determination that this claim should not have been sent to Prudential for review.

(Dkt. #25, Ex. 18, October 11, 2006, letter).

On January 10, 2007, in Plaintiff's action against Unum, Unum filed a Motion tor Entry of Order of Dismissal with Prejudice in this Court (No. 03-74608-PDB, Doc. No. 20).  In its motion, Unum argued that because it paid Plaintiff all past due disability and because Plaintiff signed a release requiring Plaintiff to withdraw his claim against Unum once that happened, Unum was entitled to dismissal with prejudice.  While Plaintiff agreed to a dismissal with prejudice for the twenty-four months of paid disability benefits, Plaintiff sought to keep Unum in the case until such time that his claims for disability against Defendants beyond the twenty-four month horizon were resolved.  In an order issued on May 29, 2007, the Court granted Unum's motion, reasoning that Plaintiff identified no real basis for keeping Unum in the case and that any documentation he needed for his case against Defendants, he can obtain through the

7

discovery process in the present case (No. 03-74608- PDB, Doc. No. 24).

Before the Court issued its order in Plaintiff's case against Unum, Plaintiff filed an action in Wayne County Circuit Court on February 7, 2007, asserting breach of contract, unfair trade practices, and ERISA violations to recover disability benefits above and beyond those provided by Unum. In his Complaint, Plaintiff asserts that Defendants are responsible for paying additional disability benefits, beyond the twenty-four months paid by Unum.

The Defendants removed the case to federal court on the basis of federal question on March 7, 2007. This case, originally assigned to Chief Judge Bernard A. Friedman, was reassigned to Judge Borman and the undersigned as a companion case on May 2, 2007. Only Count III of Plaintiff's Complaint remained, as the parties entered into a Stipulated Order of Partial Dismissal dismissing Counts I and II of the Complaint on August 28, 2008 (Dkt. #30).

On July 17, 2008, the parties filed cross-motions seeking relief. Plaintiff filed a "Motion for Judgment Granting Disability Insurance Benefits to Plaintiff" (Dkt. #25). Defendants filed a "Motion for Entry of Judgment Seeing Affirmance of Plan Administrator's Decision, and Defendant Dow Corning Corporation's Partial Motion to Dismiss or Partial Motion for Summary Judgment" (Dkt. #26).

On October 31, 2008, Judge Borman issued an Opinion and Order denying both motions and remanding this action (Dkt. #34). In his opinion, Judge Borman found that Plaintiff was entitled to a determination from Prudential regarding his claims and therefore remanded the case to Prudential for a determination as to whether Plaintiff is disabled under the Prudential Plan. Judge Borman opined that "although the record contains support for Defendants' claim that Unum based its determination on the Mental and Nervous Provision, several issues exist as to

8

whether Defendants' decision not to even review Plaintiff's claim was proper" (*id.* at 16).  In his decision, Judge Borman specifically declined Plaintiff's request that the Court conduct a *de novo* review of his case and grant an award of benefits, but rather decided to remand the claim to the plan administrator for a determination regarding long term disability based solely on physical conditions.[1]  Based on the decision to remand that claim to the plan administrator, the Court also denied Defendants' motion seeking affirmance of the plan administrator's decision.

### C) Plaintiff's Motion for Attorney Fees

Defendants do not object to the hourly rates requested by Plaintiff's counsel in the invoice attached to Plaintiff's Motion for Attorney Fees as reasonable.  Defendants also do not object to the reasonableness of the time entries listed in Plaintiff's motion except for the following dates (explained below): 11/14/06; 12/27/06; 1/4/07; 1/10/07; 1/22/07; 1/26/07; 2/8/07; 2/13/07; 2/14/07; 4/23/07; 4/24/07; 5/4/07; 6/14/07; 6/25/07; 6/27/07 and; 8/15/07.  As for the disputed time entries, Defendants contend that they are not proper because they relate not to the present case against Dow and Prudential, but rather, to a previous action brought by Plaintiff against Unum.  Plaintiff argues that all time entries – including those that pre-date the filing of the Complaint – are proper because they document work performed by Plaintiff's counsel in an effort to preserve his claims against Dow and Prudential for disability benefits beyond the initial

---

[1] Plaintiff presented one additional argument in support of his claim for an award outright of long term disability benefits.  Plaintiff argued that the long term disability policy did not contain a grant of discretionary review, and that the appropriate standard of review was therefore *de novo*.  The Court specifically rejected Plaintiff's argument regarding the standard of review, finding "that the Prudential Plan contains an express grant of discretionary authority" (Dkt. #34, p. 14).

twenty-four (24) month period covered by Unum.

As a threshold issue, Defendants also argue that Plaintiff is not a prevailing party because the only two arguments raised by Plaintiff in his motion were rejected by the Court. Plaintiff did not move the Court to remand the cause to the plan administrator for further consideration of the claim based on physical disability. Rather, Plaintiff moved the Court for a reversal of the plan administrator's decision and for an award of long term disability benefits based on the self-insured plan administered by Prudential. Defendants' moved for affirmance of the plan administrator's decision. As noted above, the Court rejected Plaintiff's argument regarding the standard of review to be applied, finding "that the Prudential Plan contains an express grant of discretionary authority." The Court also rejected Plaintiff's second argument, finding that it would not grant an award of benefits as requested by Plaintiff, but rather would remand the claim to the plan administrator.

## II.   ANALYSIS

### A.   Legal Standards

Section 1132 of ERISA provides for attorney's fees in cases brought under the Act. It states, in pertinent part, as follows:

> (g) Attorney's fees and costs; awards in actions involving delinquent contributions

> (1) In any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in discretion may allow a reasonable attorney's fee and costs of action to either party.

29 U.S.C. 1132(g)(1). Section 1132 confers "broad discretion" on a district court in deciding whether to award a party attorney fees. *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985). While "some degree of success" on the merits is generally required before a party is

10

eligible for an award of attorney fees, there is no requirement that he prevail "entirely." *Soltysiak v. Unum Provident Corp.*, 480 F. Supp. 2d 970, 974 (E.D. Mich. 2007). As such, the federal courts routinely award attorney's fees where a party achieves a court-ordered review of his claim file. *Id.* (citations omitted).

In *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985), the Sixth Circuit set forth a list of factors a district court should consider in deciding whether to award attorney's fees in an ERISA case. They are as follows:

1. The degree of the opposing party's culpability or bad faith;

2. The opposing party's ability to satisfy an award of attorney's fees;

3. The deterrent effect of an award on other persons under similar circumstances;

4. Whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

5. The relative merits of the parties' positions.

*See Moon v. UNUM Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006).

**B.    Factual Analysis**

**1.    Entitlement to Attorney's Fees**

Defendants have taken the position that Plaintiff did not "prevail" in this case. In so doing, Defendants contend that because this Court remanded the case to the Plan Administrator – instead of conducting the review itself [2] – Plaintiff is somehow "disqualified from requesting an award of attorney fees" (*See* Dkt. #38, Defendants' Response to Plaintiff's Motion for Attorney

---

[2] In lieu of remanding a case to the Plain Administrator, a District Court may elect to personally review a Plaintiff's claim. *See Vanderklok v. Provident Life and Accident Insurance*, 956 F.2d 610 (6th Cir. 1992).

Fees, p. 11).  Yet, here it is clear that Plaintiff's goal in this matter has been to secure a full and fair review of his claim for disability for benefits beyond the 24 months already granted by Unum (*see* Dkt. #39, Ex. A, 12/27/06 Letter to Prudential requesting a review of Plaintiff's claim); (*see also* Dkt. #32, Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgement, p. 4) (requesting, first and foremost, a declaration that Defendants refusal to consider Plaintiff's claim was unlawful); and (*see* Dkt. #25-16, #25-17, #25-18 and #25-19, Emails sent pre-suit requesting a review).  The mere failure to prevail on a  procedural request (*i.e.*, that his claim be reviewed by a Judge instead of the Plan Administrator) does not render Plaintiff's victory illusory.

It is also significant that the ERISA attorney's fee provision does not limit its application to "prevailing" parties.  It merely provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g) (1).  Section 1132(g) "confers broad discretion on a district court in making the award of attorney's fees." *Sec'y of Dept. of Labor v. King*, 775 F.2d 666, 669 (6th Cir.1985).  Nevertheless, the Sixth Circuit has held that it would be "an abuse of discretion for the district court to award attorney's fees to a losing party." *Cattin v. General Motors Corp.*, 955 F.2d 416, 427 (6th Cir.1992) (quoting *Bittner v. Sadoff & Rudoy Indus.*, 728 F.2d 820, 829 (7th Cir. 1984)).  *See also Webb v. Cariten Ins. Co.*, 2006 WL 1976176, *4 (6th Cir. 2006) (holding that award of attorney's fees to loser was abuse of discretion).  Accordingly, some degree of success on the merits is generally required before a party is eligible for an award of attorney's fees.  *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 (1983) (holding that a plaintiff must achieve "some success on the merits" to be eligible for fees under the Clean Air Act); *Cattin*, 955 F.2d at 427 (noting with

approval the Seventh Circuit's application of *Ruckelshaus* in an ERISA case).   Nevertheless,
there is no requirement that a party prevail entirely in order to be eligible for attorney's fees.
*Douglas v. Evans Industries, Inc*., 184 F. Supp.2d 636, 639 (E.D. Mich.2001) (plaintiff was
prevailing party entitled to fees even though she obtained judgment for less than amount sought).
In this case, plaintiff is not a "loser;" rather, it appears plaintiff has had a substantial level of
success on the merits even if benefits have not yet been granted.

   In their response brief, Defendants rely on *Quinn v. Blue Cross and Blue Shield
Association*, 161 F.3d 472, 476-77 (7th Cir. 1998), for the proposition that a motion for
attorney fees brought in the wake of a Court-ordered remand is "premature."   Their reliance
on this case is misplaced.   In *Soltysiak v. Unum Provident Corp*., 480 F. Supp. 2d 970, 974 (E.D.
Mich. 2007), the Court declined to follow *Quinn* on the ground that in that particular case there
was no evidence of "flaws in the decision-making process." *Id*. at 974.   Conversely, in *Soltysiak*
– as in the present case – because the decision-making process was untimely and error-laden, an
award of attorney fees was, in fact, warranted.  *Id.*   Accordingly, *Quinn* is inapposite, and
therefore should have no bearing on the resolution of the present case.

   Defendants also support their response brief with *dicta* from *Gaeth v. Hartford Life
Ins. Co.*, 538 F.3d 524 (6th Cir. 2008).   In *Gaeth*, after the Court had already applied the
*King* factors, it questioned whether it would be proper to award attorney fees to a claimant
who has not yet obtained an award of benefits.  *Id.* at 534.   It then went on to state that it
"need not address that issue" because the plaintiff had failed to demonstrate that the *King*
factors favored an award of attorney fees.

   Because the cited portion of *Gaeth* is *dicta* (and only ponders a question at that) it is not

binding on this Court.  *See Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006).  It should

also be noted that *Gaeth* is easily distinguishable from the one at hand.  In *Gaeth*, defendant

denied plaintiff's claim for benefits after it discovered that plaintiff – who claimed to be disabled

– was actually running his own "antique-lamp restoration business" and "moving about

without apparent difficulty." *Id.* at 527.  Plaintiff was subsequently indicted by a grand jury

on two counts of "theft by deception." *Id.*

  While the district court awarded plaintiff attorney fees on the grounds that the decision to

cut-off plaintiff's benefits was not adequately supported by objective medical evidence, the

Court of Appeals reversed.  In so doing, the Court noted that the district court had failed to apply

the *King* factors, and moreover, that the record contained virtually no evidence of an existing

continued disability.  *Id.* at 534.

  Conversely, in the present case Defendants have ignored ample record evidence –

*e.g.*, letters and emails between Unum and Prudential referencing future benefits – that,

in effect, erode their position that Plaintiff's claim was previously "terminated" by

Unum (*See* Dkt. #34, Opinion and Order, pp. 17-18; *see also* Dkt. #35, pp. 5-6) (addressing

Defendant's bad faith/culpability).  Indeed, the record reveals a flawed decision-making process

reminiscent of the *Soltysiak* case, *supra*.  Accordingly, *Gaeth* is distinguishable from the case at

hand, and it is therefore appropriate for this Court to consider awarding attorney fees.

    2.  **The King Factors**

  The *King* factors favor an award of attorney fees in this case.  Defendants attempt to

justify their complete refusal to process Plaintiff's claim by asserting the Judge Borman found

that there was "support in the record" for Prudential's assertion that Mr. Weaver's claim was

decided by Unum under the mental and nervous limitation.  While it is true there were some references in the record that Unum may have made its finding under the mental and nervous limitation, the record is conclusive that Unum did not ever intend to foreclose (*i.e*., "terminate") Mr. Weaver's claim for ongoing benefits based on a broader impairment than psychiatric.

Judge Borman's Opinion at pp. 16-18 establishes that Prudential's position was arbitrary and capricious.  In *Gaeth*, the 6th Circuit found

> Hartford might very well have had a good faith basis for believing that Gaeth was disabled. But it terminated his benefits without a single piece of current medical evidence regarding his physical condition as it relates to the occupation for which he had been disabled, as the District Court explained at length. Hartford is therefore culpable for making a benefits determination that was unsupported by **competent** medical evidence. Accordingly, we conclude that the District Court did not abuse its discretion in weighing the first factor in favor of awarding attorneys fees.

*Gaeth*, 538 F. 3rd at 530 (emphasis added)

In this case, Prudential asserts it had a "good faith" belief that Unum decided the case under the mental and nervous condition.  Yet, as found by Judge Borman, that certainly was not conclusively shown by any "competent" evidence.  In fact, Unum refused to issue a revised letter specifying that its decision was based on a mental or nervous condition.  Moreover, the competent evidence establishes that Unum clearly considered that the claim for physical disability would move forward.  Prudential has no legitimate argument in support of its complete refusal to provide Plaintiff with a review of his claim.

Defendants assert the factor regarding the existence of a "deterrent effect" of Judge Borman's opinion should favor them because there was a narrow set of facts involving two LTD policies unlikely to arise in the future.  While likely to have a lesser sweep of future cases than many opinions, Judge Borman's opinion could have future effect in those situations where there

15

is a third party administrator for one period of time and a second TPA and/or payor for a subsequent period of time.  In those situations, Judge Borman's decision establishes that a plan administrator may not ignore, as did Prudential here, its obligation to provide a review of an underlying decision from an earlier TPA.  Judge Borman's decision in this case prevents a claimant from being whipsawed by the manner in which a company has chosen to fund its exposure.

With respect to the "relative merits of parties' position" factor, Defendants focus on Judge Borman's decision regarding two procedural issues: the standard of review to be used and the remedy for Defendants' violation of ERISA.  As noted above, during pre-suit communications, all Plaintiff sought was a full and fair review of his claim for disability. Defendants refused to provide that review.  The litigation resulted in precisely what Plaintiff had asked for pre-suit: a full and fair review of his claim.[3]

### 3.    Proportionate Attorney Fees

That being said, while the Plaintiff was successful to some degree in his suit, it is also clear that Plaintiff's victory was not absolute.  As Defendants indicate, Plaintiff did argue that the standard of review in this matter is *de novo* and that Judge Borman should grant benefits after conducting his own review of Plaintiff's claims.  As noted above, Judge Borman declined to either adopt Plaintiff's proposed standard of review or conduct the review himself.  Indeed, Judge Borman denied Plaintiff's motion for judgment, and it is not yet clear what benefits Plaintiff will receive on remand.  Accordingly, the undersigned recommends that Plaintiff

---

[3] Defendants' argument also ignores Judge Borman's ruling that Dow was a proper party Defendant.

receive a proportionate award of attorney fees equal to his victory obtained in this case.  Because Plaintiff was successful in approximately one-third of his arguments, the undersigned recommends awarding Plaintiff one-third of his counsel's reasonable attorney fees.

The undersigned's recommended approach is similar to that used in civil rights cases.  In such cases, a civil rights plaintiff who succeeds to a degree sufficient to qualify as a prevailing party meets the threshold qualification for an award of attorney's fees, regardless of the degree of success.  *Farrar v. Hobby*, 506 U.S. 103 (1992).  Yet, the degree of a plaintiff's success is a critical factor in determining the amount of a reasonable attorney's fee.  *Farrar v. Hobby*, 506 U.S. 103 (1992); *Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir.  2001); *Brodziak v. Runyon*, 145 F.3d 194 (4th Cir. 1998); *Estate of Borst v. O'Brien*, 979 F.2d 511 (7th Cir. 1992).  Thus, a reduction in the fee may be appropriate where a plaintiff has achieved only partial or limited success, even if successful and unsuccessful claims were interrelated.  *Volk v. Gonzalez*, 262 F.3d 528 (5th Cir. 2001); *Rural Water System # 51 v. City of Sioux Center*, 202 F.3d 1035 (8th Cir. 2000), *reh'g and reh'g en banc denied*, (Mar. 7, 2000) and *cert. denied*, 531 U.S. 820, (2000); *Cole v. Wodziak*, 169 F.3d 486 (7th Cir. 1999); *Simpson v. Sheahan*, 104 F.3d 998 (7th Cir. 1997); *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995); *Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992); *Estate of Borst v. O'Brien*, 979 F.2d 511 (7th Cir. 1992) (fee reduced where plaintiff was successful on only one claim and was awarded less than 1% of damages sought); *Grant v. Martinez*, 973 F.2d 96 (2d Cir. 1992); *Allen v. Higgins*, 902 F.2d 682 (8th Cir. 1990) (fee reduced from $20,000 to $10,000; jury verdict for plaintiff was against only one of ten defendants and on only one of twenty claims, for total award of $1); *Zook v. Brown*, 865 F.2d 887 (7th Cir. 1989) (fee reduced by 75% due to limited success).

Plaintiff's counsel, Larry W. Bennett, has provided the Court with an affidavit in support of his request for attorney fees (Dkt. #35, Ex. A) and time records indicating the fees billed (Dkt. #35, Ex. B). Those records show $24,414.00 for time billed, $376.10 for transcript fees and $150.00 for filing fees. Thus, Plaintiff's total request equals $24,940.10.[4] As noted above, Defendants do not object to the hourly rates requested by Plaintiff's counsel as reasonable. Defendants do, however, object to various time entries, including those that pre-date the filing of the Complaint. They contend that the challenged entries are not proper because they relate not to the present case against Dow and Prudential, but rather to a previous action brought by Plaintiff against Unum.

The undersigned has reviewed Plaintiff's counsel's bill and finds that several entries do appear to be associated with time billed for work in Case No. 03-74608, *Weaver v. Unum Life Ins. Co.*, and not directly in the present action. These entries include the following:

| | | | |
|---|---|---|---|
| 11/14/2006 | 0.50 | $175.00 | Letter to Witenoff; Preparation of Order of Dismissal; Effort to Preserve Continuing Claim |
| 12/27/2006 | 0.30 | $105.00 | Letter to Prudential |
| 01/4/2007 | 0.20 | $70.00 | Letter from Prudential |
| 01/10/2007 | 2.00 | $700.00 | Receipt & Review of Defendant's Motion for Entry |

---

[4] Defendants argue that in order to be eligible for an award of attorney fees, Plaintiff would have to show that he was "billed for the work in question" (*See* Dkt. #38, Defendant's Response to Plaintiff's Motion for Attorney Fees, p. 18). Defendants cite no authority for this proposition. In point of fact, the law is clear that in cases involving a contingent fee agreement, a reasonable attorney fee is available under the standard lodestar approach. *See Crider v. Highmark Life Ins. Co.*, 2006 U.S. Dist. LEXIS 84564, * 12, n.1; *see also Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989) (existence of contingent fee agreement did not render the lodestar approach inapplicable); *Fuhr v. School Dist. of City of Hazel Park*, 364 F.3d 753, 762 (6th Cir. 2004) (similar). Accordingly, the existence of a contingent fee agreement has no bearing on propriety of an award of attorney fees.

18

|            |      |          | Of Order of Dismissal; Initial Work Regarding Response |
|------------|------|----------|--------------------------------------------------------|
| 01/22/2007 | 1.80 | $630.00  | Final Preparation of Answer to Defendant's Motion to Dismiss |
| 01/26/2007 | 0.20 | $70.00   | Letter to Client |
| 04/23/2007 | 0.80 | $280.00  | Preparation of Supplemental Submission in Opposition to Defendant's Motion for Entry of Order of Dismissal |
| 04/24/2007 | 0.70 | $245.00  | Preparation of Third Request to Produce and Interrogatories to Defendant |
| 05/04/2007 | 0.30 | $105.00  | Preparation for Telephone Call with Court |

(*See* Dkt. #35, Ex. B).

The entries listed above relate to actions taken before the filing of the present action or coincide with actions taken in Case No. 03-74608, such as conference calls held by the Court or responses to filings such as Defendant's Motion for Entry of Order of Dismissal (Dkt. #20 in Case No. 03-74608). It is important to note that Case No. 03-74608 was not consolidated with the present action. More importantly, Plaintiff did not succeed to any degree in Case No. 03-74608. On May 29, 2007, Judge Borman issued an Order granting Defendant's Motion for Order to Dismiss With Prejudice (Dkt. #24 in Case No. 03-74608). Judge Borman subsequently issued a March 20, 2008, Judgment in favor of Defendant against Plaintiff (Dkt. #25 in Case No. 03-74608). Because Plaintiff was unsuccessful in Case No. 03-74608, it would be improper to award Plaintiff's counsel's attorney fees for work done in that matter, even if work in that case in some way related to the present matter. Accordingly, the entries noted above should be subtracted from Plaintiff's bill in determining what award of attorney fees should be granted.

The entries listed above total $2,380.00. Subtracting this amount from Plaintiff's

counsel's total fees of $24,414.00 leaves $22,034.00.  As noted above, the undersigned

recommends awarding Plaintiff one-third of his counsel's reasonable attorney fees based on his

degree of success in this matter.  One-third of $22,034.00 is $7,344.67.  Accordingly, **IT IS**

**RECOMMENDED** that Plaintiff be awarded $7,344.67 in attorney fees and $526.10 in costs for a

total award of $7,870.77

## III.   RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's motion for attorney

fees be **GRANTED IN PART** and that Plaintiff receive attorney fees and costs in the amount of

$7,870.77.  The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within ten (10) days of service of a copy

hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S.

140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*,

638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others

with specificity, will not preserve all the objections a party might have to this report and

recommendation.  *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit*

*Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR

72(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than twenty (20) pages in

length unless by motion and order such page limit is extended by the Court.  The response shall

address specifically, and in the same order raised, each issue contained within the objections.  A

party may file a reply brief within 5 days of service of a response.  The reply shall be not more

than five (5) pages in length unless by motion and order such page limit is extended by the

Court.

Dated: June 15, 2009                              s/Steven D. Pepe
Ann Arbor, Michigan                                United States Magistrate Judge


Certificate of Service


The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or

parties of record by electronic means or U.S. Mail on  June 15, 2009.



                                        s/Jermaine Creary

                                        Interim Case Manager